Delivered December 16, 1890.

---

### C. M. G<small>REENLEE</small> v. W. H. T<small>AYLOR</small> <small>ET AL</small>.

No. 6806.

**Title by Limitation.**—See facts in evidence upon the trial of an action of trespass to try title in which plaintiff relied upon limitation for title. The facts do not show title in plaintiff under any of the periods of limitation, and the court should have charged the jury to find for the defendants.

A<small>PPEAL</small> from Denton. Tried below before Hon. D. E. Barrett.

On the 3rd day of July, 1888, the appellant, C. M. Greenlee, brought this suit as an action of trespass to try title and for damages against appellee W. H. Taylor and against minors Wilford Stroud, Freeman Stroud, James Stroud, and Jew Stroud, for a certain tract of land out of the O. S. Brewster survey, described by metes and bounds. By amended petition, filed January 14, 1889, appellant, for his wife Nannie E. Greenlee, sued for title and possession of the above described land and for damages, setting out his title specially and pleading the statute of three, five, and ten years limitation. On January 9, 1889, the appellee Taylor filed his answer, in which he disclaimed to all the land described in plaintiff's petition except so much thereof as conflicted with the 77-acre tract of land out of the A. N. B. Tompkins survey and 43 acres out of the E. Puchilaski survey, in Denton County, and both tracts described by metes and bounds; also pleading general denial, not guilty, and statute of five and ten years limitation. The appellees Strouds, by their guardian *ad litem*, E. C. Smith, on the 10th day of January, 1889, filed answer in which they disclaimed to all the land sued for except so much thereof as conflicted with 160 acres out of said Brewster survey, describing the same by metes and bounds, and also pleaded the general denial, plea of not guilty, and the five years statute of limitation.

A trial was had on the above pleadings January 15, 1889, by jury, and

resulted in a verdict for all the appellees, and judgment was rendered thereon and against appellant for costs.    He appealed.

Plaintiff read in evidence contracts and deeds as follows, which he set up in his petition :

1.  Locative contract between Elias Brush and John A. Black, in which Brush acknowledged that he had placed in the hands of Black the O. S. Brewster 640-acre headright certificate, and the Samuel Lewis third class headright 320-acre certificate, both for location and to procure patents, which it is acknowledged Black had done, and that for his services he was to have one-half of the land patented as his locative interest.    The date of the contract is November 10, 1858; filed for record and recorded in Denton County, June 20, 1888.

2.  Patent to O. S. Brewster for 564¼ acres of land, located by virtue of the 640-acre Brewster certificate No. $\frac{4082}{4183}$, situated in Denton County, describing the land.

3.  Deed from John A. Black to John L. Lovejoy, Sr., for the land described in plaintiff's petition out of the O. S. Brewster survey, dated 11th April, 1866.

4.  Deed from Lovejoy to George Goldthwaite for the same land, dated May 29, 1867.

5.  Deed from Goldthwaite to John A. Althouse for the same land, dated June 2, 1877.

6.  Deed of Althouse and wife to A. W. Robertson for the same land, dated January 30, 1877.

7.  Deed from Robertson to Thomas E. Hogg for the same land, dated November 13, 1877.

8.  Deed from Hogg to John Davidson for the same land, dated November 28, 1877, and filed for record January 18, 1878.

9.  Deed from Davidson and wife to Nannie E. Greenlee, wife of C. M. Greenlee, for the same land, dated 11th of February, 1887, and filed for record the same day.

All of the above deeds were duly acknowledged and filed for record, and duly recorded in the record of deeds of Denton County.

The land described in plaintiff's petition begins at the northeast corner of the Brewster 564½ acres, and at the northwest corner of the A. N. B. Tompkins a stake in the prairie; thence west 1184 varas to the northwest corner of the Brewster survey a stake; thence south with the west boundary line of said Brewster 655½ varas to a stake, it being the northwest corner of a tract out of said Brewster survey deeded by Elias Brush, assignee of O. S. Brewster, to one Palmer; thence east with Palmer's north line 1184 varas to his northeast corner, on the east boundary line of said Brewster survey; thence north 655½ varas to the beginning.

The land claimed by Taylor as described in his answer lies east of the Brewster survey and includes about two acres of it.

The 160 acres of land claimed by the Strouds is described in their answer as follows: Beginning at the southeast corner of the John Davidson land (a part of the Brewster survey) thence west 1520 varas to the west line of said Brewster; thence south 595; thence east 1520 varas, east line of the Brewster; thence north 595 to the beginning.

Defendants Stroud read in evidence deed of J. A. Carroll for the 160 acres of land described in their answer, a general warranty deed, dated 29th May, 1880, duly acknowledged and filed for record same day, and duly recorded the 31st day of May, 1880.

A map showing the Brewster tract and its subdivisions is given.   (See next page.)

A. W. Robertson, witness for plaintiff, testified substantially that about the year 1866 he examined into the title to the O. S. Brewster survey; did so at the request of J. A. Black; and his opinion was that the record of deeds of Denton County showed at that time that the title was in Black; that he could not state the different instruments of conveyance; could not say that he saw or examined any transfer on the record from Brewster to Black, or to any one else, and if he saw the same he could not give the state of contracts or to whom such transfer was made; did not remember seeing a transfer from Brewster to the Brewster land; that he has known the land since the war; there was at one time a house on it and some parties living on it; this was in 1868 or 1870; they moved off, and at the time John Davidson purchased the land (November 28, 1877) there was no one living on any part of it; Mr. Davidson, shortly after he purchased the land, improved it, put a house on it, fenced a portion of it, moved on the land, and resided there till he sold out to plaintiff (11th of February, 1887). He moved on the land in December, 1877.

Matt Dougherty, witness for plaintiff, testified that he knew the survey; had known it since the war; had been deputy county clerk of Denton County, and had first and last a great deal to do with the land records of the county; that his impression was there was once on the records some kind of a transfer to the land, but could not state that there ever was a transfer from Brewster to any one conveying either the certificate or the land.   The court house of the county was burned, and all the records were destroyed by the fire.

C. C. Dougherty, witness for plaintiff, testified that there was a house built on the land in 1865, but that it was moved off about the year 1877.

J. A. Carroll, witness for plaintiff, testified that at one time he owned the south of the survey; bought it at sheriff's sale, and had the field notes of the survey copied into his deed; does not remember that he ever saw any transfer or record of it by Brewster to any one of the certificate or the land; that the land he bought was sold as the land of one Palmer, and his deed described the portion he bought at the sale.

Wm. Pierce, county surveyor of Denton County, witness for plaintiff,

N.
1488 vs.

Thompkins

JOHN DAVIDSON'S TRACT
137½ acres

Taylor's Fence

W. H. TAYLOR'S

Division Fence

122          LAND IN DISPUTE

Pierce's Division Line

149

STROUDS
160 acres

J. A. CARROLL

166

237

998

319

testified that he ran out the land called for in plaintiff's deed from Davidson last summer; located its corners and boundaries.   Commenced at the northeast corner of the A. N. B. Tompkins survey and ran out the distance of its north line to what should be the northeast corner of the Brewster in the prairie.   The Brewster calls to begin at the northwest corner of the Tompkins.   He then ran the north line of the Brewster and found its northwest corner; found the west line and the southwest corner, then ran out and found what he took to be the southeast corner of the Brewster, which would be the southwest corner of the Tompkins; then ran out the 320 acres of the Brewster which Elias, Brush had deeded to Palmer and located its north boundary line, which would be the south boundary line of plaintiff's tract; found that the Strouds had about 35 acres of the land under fence north of the line he established.   The plaintiff, he said, was in possession of about 167½ acres of land, 30 acres more than the number called for in his deed, and to include all the land north of the line established by him, it would give Mr. Greenlee about 202½ acres.   On the south end of the east line of the Brewster there is no conflict with land claimed by defendant Taylor and which he has in possession; but the east boundary line of the Brewster, at about one-half of its length, crosses the west string of Taylor's fence, and at the northeast corner of the Brewster the line is about 20 varas inside of Taylor's fence, thus including in Taylor's field about 2 acres of land properly belonging   · to the Brewster survey.   The 2 acres are in a wedge shape, 300 varas long and 20 varas wide at the north end, a point at the south end.   There is a public road just outside of Taylor's field on the west.   The Brewster calls for the Tompkins; witness did not run out the Tompkins, only its north line.   The northeast corner of the Tompkins is defined and can be identified, but its northwest corner is in the prairie and can only be found by course and distance.   He don't know the variation on which the Tompkins lines were run.   He found at the southwest corner of the Tompkins a witness tree marked as called for in its field notes, and witness is satisfied it is the southwest corner of the same; found one marked tree on the line of the Tompkins. ﹒ He had Carroll's deed from the sheriff with him when running out the Carroll 320 acres, and established its northeast and northwest corners according to the calls in the deed.

Plaintiffs proved that they and their vendor, Davidson, had paid all taxes on the land described in their petition out of the Brewster for each year for more than five years before the suit was brought, and that very soon after Davidson purchased from Hogg (28th of November, 1877) he built a house on the same, and had been in actual possession, use, occupation, cultivating, and enjoying all the land described in the petition lying north of the fence ever since Davidson purchased.

L. L. Stroud, for defendants, testified that a short time after the deed by Carroll to the Strouds was made he, the witness, and John Bacon, a sur-

veyor, went on the land conveyed to run off and locate the 160 acres of land. Mr. John Davidson at the time owned the land described in the petition which the plaintiff now owns north of the 160 acres sold by Carroll to defendants Stroud. "When Bacon and I got out to where the land was, went to Mr. John Davidson, who was then living on his tract, and asked him to point out to us his southeast corner. He took us to where his southeast corner was and pointed the same out to us. It was a rock in the road, a little east of the east corner or end of his south string of fence. From this corner Mr. Davidson had a fence running west about half way on his south line, standing where the present fence now stands between the plaintiff and the 160 acres. Mr. Bacon commenced at this corner and run off and located on the ground the 160 acres described in the Carroll deed to the Strouds, defendants; set up and marked corners to the same. In the fall of 1880 the 160 acres so surveyed was enclosed with a fence. The fence on the south line of Davidson was extended to the west line of the Brewster survey. Defendants Strouds built the west end of the division fence, but John Davidson assisted in building it, and when it was finished it constituted the north line of the 160 acres and the south line of the Davidson tract, and the same was kept and recognized by defendants and John Davidson as a division fence between their tracts of land. After the fence was made in the fall of 1880 defendants broke up and placed in a state of cultivation about 35 acres of land. They broke the land up to the division fence and cultivated the same during every year from that time till the present.

"They hired Mr. Davidson to assist in building a small tenant house on the disputed strip of land, about thirty steps from the fence, which cost about $75. Davidson lived on his land described in plaintiff's petition, February, 1887, when he sold to plaintiff. During all this time, and while defendants were breaking, cultivating, and improving the land immediately south of the fence, Davidson knew of it, and at no time did he intimate that he was claiming any land south of the division fence; and since he sold the land to plaintiff the defendants and the plaintiff have been keeping up the division fence, the plaintiff the east end and defendants the west end. Defendants Strouds have paid all the taxes assessed on this 160 acres for the years 1880, 1881, 1882, 1883, 1884, 1885, 1886, and 1887 (the suit was filed July 3, 1888), and have all the tax receipts for every year since they owned it, to-wit, the land sold to them and run of by the surveyor Bacon, which has been enclosed with a fence. There is no land under the fence except that which Bacon run out."

On cross-examination he stated again where the rock corner was which Davidson pointed out as his southeast corner, and said it was there yet unless it has been taken up in the last few days. He also states again that Bacon commenced at Davidson's southeast corner and run out the 160 acres. He was one of the chain carriers, and his recollection was that

Davidson was another. He knows Davidson was present when the land was run out. Witness purchased the land for the defendants Strouds, his grandchildren, and had the deed made to them.

Stone, a witness for defendants Strouds, testified that he knew the land; had a lime kiln on the land claimed by the Strouds, and when he had used all the rock off that land that he could, he asked Davidson (in 1882) if he could obtain rock from his land. Davidson gave him permission to take the rock, and witness asked him to show him his land, and he (Davidson) pointed to the land north of the division fence and told witness he could get the rock there. The Strouds were cultivating land close up to the fence on the south side.

Defendant Taylor read in evidence a deed from Thomas Fletcher to him, dated 16th June, 1874, together with the acknowledgment and certificate of registration, to 77 acres and the 43 acres, as described in his answer, out of the Tompkins and the Puchilaski surveys, recorded June 22, 1874, and again duly recorded 2nd January, 1878. He moved on the land sold to him by Fletcher in 1870, Fletcher and he having bought it in 1870, when in 1874 Fletcher sold to him. He says the entire tracts sold to him were run out and located on the ground by George Gray, who was at the time county surveyor, who at the same time ran out the Tompkins survey. In 1874 all the land sold to him was enclosed with a fence, and in same year was put in a state of cultivation. The west string of his fence, he says, is not as far west as the west boundary of his land as located on the ground, but is a few feet east of such line. He has repaired the fence, and four or five years before the trial he changed the rail fence to a barbed wire fence, as close to the rail fence as it could be done, which barbed wire fence is on the land as surveyed to him by George Gray. There is a public road on the west side his farm, along by the side of the west boundary fence between his land and the land of plaintiff. He has cultivated and used all the land inside of the fence since 1874, and paid all the taxes on the land described in his deed since it was enclosed, from 1874 to 1888 inclusive, and has all the tax receipts for taxes paid every year; such taxes paid on all the land run off to him and enclosed.

Plaintiff Greenlee testified in his own behalf. He thinks the strip of land in dispute is about 35 acres, and lies immediately south of the division fence between his land and the land of the Strouds; had his land run off last summer before the trial and found that defendants Strouds were in possession of and claiming about 35 acres of land that he thought belonged to him. His deed calls for 137½ acres of land, but he says the field notes embrace more land. North of the division fence he has 137½ acres of land.

The trial was had January 15, 1889, and verdict and judgment were for defendants. The plaintiff appealed.

This is purely a fact case.

*A. W. Robertson*, and *Owsley & Walker*, for appellant.

*Smith & Bell*, for appellees.

COLLARD, JUDGE.—The court below should have instructed the jury to find for the defendants. There is no pretense that there was any proof to establish a transfer of the certificate by Brewster to Brush or any one else, nor that any presumption would arise that such a transfer was made. There was no submission of such a question to the jury by the lower court, no charges asked by plaintiff below, and no assignments of error on the issue presented in this court.

Plaintiff's claim of title was by limitation under the ten and five years statute. Let it be admitted for argument sake that his deed described and included the strip of land in dispute, and that there was no agreement by Davidson or acquiescence binding upon him that defendants Strouds' fence was the division line, and let it be admitted that the Strouds have no title under the five years statute of limitation because they failed to show that their deed from Carroll described and included the land in controversy, still the plaintiff can not recover, because she has no title by limitation or otherwise. The suit is trespass to try title with plea of not guilty, and before boundary questions can be important plaintiff must show title, otherwise defendants will recover.

The three years statute of limitations pleaded can not avail, because the plaintiff has not shown title or color of title. She can not recover under the five years statute, because she and those under whom she claims have not had five years exclusive and uninterrupted possession. There is no dispute, and can be none, concerning the evidence on this question. Davidson's possession commenced in 1877, after his purchase from Hogg, and conceding that his deed included the land in controversy, his possession was only constructive as to the land in dispute, and this possession was interrupted by the actual pedal possession of defendants Strouds in 1880, who fenced all the disputed land and cultivated portions of it up to fence. Such actual possession stopped the running of the statute in favor of plaintiff's constructive possession. Defendants Strouds have continued to so hold the land up to the present time. If their deed embraced the land in dispute, their possession was sufficiently long to give them title under their plea of five years limitation, all other requirements of the statute having been complied with; but if their deed does not describe the land, their possession has been adverse to Davidson's and to plaintiff's (which if continued sufficiently long would give them title under the ten years statute), and consequently from the time of their actual entry the statute ceased to run in favor of plaintiff. Plaintiff's possession and that of others which she pleads was less than five years, and of course less

than ten years.    Therefore, having shown no title, she can not recover. Bracken v. Jones, 63 Texas, 184.

Defendant Taylor had been in the actual occupancy of the strip of land demanded of him by plaintiff's suit since 1874, more than ten years prior to the institution of this suit, claiming the same as his own, cultivating and using the same.    Whether his deed describes the disputed two acres or not so as to give him title under the plea of five years limitation, he can hold the same under the plea of ten years limitation.    There is no question but that all the defendants claimed to own the land in possession by them for which they are sued.    Their possession was hostile and adverse from the beginning.

It is not necessary to consider other questions in the case.    No other judgment could have been legally rendered in the case than the one that was rendered, and we think it ought to be affirmed.

*Affirmed.*